**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| TIMOTHY MCVAY, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>HARVARD BUSINESS PUBLISHING CORPORATION,<br><br>  Defendant. | Case No. 1:22-cv-00802-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>**ORAL ARGUMENT REQUESTED** |

**<u>BRIEF IN SUPPORT OF DEFENDANT HARVARD BUSINESS SCHOOL
PUBLISHING CORPORATION'S MOTION TO DISMISS
AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND........................................................2

HISTORY OF THE PPPA...................................................................................................3

ARGUMENT .........................................................................................................................4

    I.    McVay's Claims Under the Pre-July 31, 2016 Version of the PPPA Are Time-Barred.................................................................................................5

    II.    McVay Fails to State a Claim Under the PPPA........................................................7

        A.    McVay Fails To Allege Any Disclosures In The Relevant Period ...............7

            1.    McVay's Allegations Concerning Data Cards Do Not Support That His PPPA Claim Is Timely ..............................8

            2.    McVay Cannot Rely Upon HBP's Privacy Policy To Demonstrate His Claims Are Timely.............................................9

            3.    McVay Fails To Allege Any Facts Regarding His Own Alleged Subscribership .........................................................10

        B.    McVay Fails To Allege Facts To Support His Claim That HBP Disclosed His PRI ...............................................................................10

    III.    McVay Cannot Amend Johnson's Complaint ........................................................12

    IV.    Dismissal with Prejudice is Warranted ..................................................................13

CONCLUSION....................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................4

*Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*,
   569 F. App'x 438 (6th Cir. 2014) .....................................................................................14

*Barnes v. First American Title Ins. Co.*,
   473 F. Supp. 2d 798 (N.D. Ohio 2007)..............................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................4, 12

*Bishop v. Lucent Techs.*,
   520 F.3d 516, 520 (6th Cir. 2008) ......................................................................................4

*DM Rsch., Inc. v. Coll. of Am. Pathologists*,
   170 F.3d 53 (1st Cir. 1999)................................................................................................12

*Fisher v. Perron*,
   30 F.4th 289 (6th Cir. 2022) .............................................................................................12

*Horton v. GameStop Corp.*,
   380 F. Supp. 3d 679 (E.D. Mich. 2018).............................................................................11

*Krassick v. Archaeological Institute of America*,
   2022 WL 2071730 (W.D. Mich. June 9, 2022) ..................................................................5

*League of United Latin Am. Citizens v. Bredesen*,
   500 F.3d 523 (6th Cir. 2007) ..............................................................................................4

*Nashel v. New York Times Co.*,
   No. 2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022)............................. *passim*

*In re Packaged Ice Antitrust Litig.*,
   No. 2:08-MD-01952, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) ....................................13

*Pratt v. KSE Sportsman Media, Inc.*,
   586 F. Supp.3d 666 (E.D. Mich. 2022)................................................................................5

*Stapp v. Broadwing, Inc.*,
   No. 1:07-CV-00970, 2009 WL 530100 (S.D. Ohio Feb. 27, 2009) ........................................13

*Summit Off. Park, Inc. v. U.S. Steel Corp.*,
    639 F.2d 1278 (5th Cir. 1981) ..................................................................................13

*Wheaton v. Apple Inc.*,
    No. 3:19-CV-02883, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ........................12

*Zurich Ins. Co. v. Logitrans, Inc.*,
    297 F.3d 528 (6th Cir. 2002) ....................................................................................13

**Statutes**

M.C.L. § 445.1711, *et seq.* (2016) ......................................................................................1, 4

M.C.L. § 445.1712 (1989) ...................................................................................................1, 7

M.C.L. § 445.1715 (1989) ........................................................................................................4

MCL § 600.5805 .......................................................................................................................5

MCL § 600.5813 .......................................................................................................................5

**Other Authorities**

Mich. Executive Order No. 2020-58 ....................................................................................6, 7

Mich. Supreme Court Administrative Order 2020-3 .............................................................5, 6

**INTRODUCTION**

This action arises out of an eleventh-hour attempt to assert a claim under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715 ("PPPA") against defendant Harvard Business School Publishing Corporation[1] ("HBP") prior to the expiration of what plaintiff, Timothy McVay ("McVay") perceives as the relevant statute of limitations. The motivation for this action is plain – counsel for plaintiff is seeking to enforce a version of the PPPA that was amended more than 6 years ago to eliminate the $5,000 statutory damages provision that made it an attractive vehicle for the very type of putative class action asserted here. McVay's attempt to invoke this relief here, however, fails for a myriad of reasons.

First, while McVay attempts to invoke an executive order by the Governor to assert that the statute of limitations for his PPPA claim was tolled for a brief period, that order does not preserve specific remedies that the Michigan Legislature concluded were not an appropriate form of recovery under the PPPA. There can be no question that the instant action was filed more than 6 years after the statutory amendment and therefore statutory damages are not available.

Second, the First Amended Complaint that McVay purportedly filed ("FAC") is impermissibly vague with respect to what information was disclosed, to whom and when. Subject to various exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that indicates the identity of a customer." M.C.L. § 445.1712 (1989). The FAC contains no allegations about the actual disclosure of any customer information (much less any information regarding McVay). Indeed, the FAC is devoid of any allegations concerning (i) which customers' information was supposedly disclosed or to whom, or (ii) when that disclosure purportedly occurred. Instead, McVay can only muster generalized

---

[1]  Improperly named by Plaintiff as Harvard Business Publishing Corporation.

allegations about irrelevant facts that fall outside the narrow time period relevant to this case. These are precisely the sort of allegations that, just last month, the Eastern District of Michigan held were insufficient to state a PPPA claim in *Nashel v. New York Times Co.*, No. 2:22-CV-10633, 2022 WL 6775657, at *1 (E.D. Mich. Oct. 11, 2022).

Finally, the FAC that was purportedly filed on behalf of McVay is procedurally improper. This action was initially instituted on behalf of Carlos Johnson – Johnson has now disappeared from the FAC because he could not maintain an action in his own right. Plaintiff's counsel is not entitled to simply file a complaint on behalf of a placeholder plaintiff who has no viable claim in an effort to toll the limitations period.

Accordingly, HBP respectfully requests that this court grant its motion to dismiss with prejudice.

## PROCEDURAL AND FACTUAL BACKGROUND

This action was initiated on August 31, 2022 by then-named plaintiff, Carlos Johnson. (Compl., ECF 1, PageID.1-25.) The initial complaint asserted a single claim under the PPPA against HBP.[2] (*Id.* at ¶¶ 55-73, PageID.20-23.) On October 12, 2022, McVay purported to amend the complaint filed by Carlos Johnson, asserting a single claim under the PPPA. (FAC, ECF 21 at ¶¶ 58-76, PageID.590-593.) There is no longer a single claim or allegation asserted on behalf of Carlos Johnson. (*See generally id.*) McVay seeks, *inter alia,* relief for himself and on behalf of a putative class under Section 5(a) of the PPPA in the amount of $5,000. (*Id.* at ¶ 76. PageID.593.)

---

[2] A little more than one year ago, the same group of attorneys filed a suit against HBP asserting the same PPPA claim on behalf of a different plaintiff, Sharon Hamilton, on August 5, 2021. (*See Hamilton v. Harvard Business Publishing Corporation*, No. 4:21-cv-11808-SDD-CI (E.D. Mich.), ECF 1). That action ultimately was voluntarily dismissed with prejudice. (Id., ECF 3).

2

McVay alleges that he was a subscriber to the *Harvard Business Review* "including prior to July 31, 2016." (*Id.* at ¶ 12, PageID.575-576.) In support of his claim that HBP violated the PPPA, McVay alleges that HBP disclosed Plaintiff's "Private Reading Information to data aggregators, data appenders, and/or data cooperatives, who then supplement that information with data from their own files." (*Id.* at ¶ 12, PageID.575-576; *see also id.* at ¶ 1, PageID.569-570.) McVay does not allege when he subscribed to *Harvard Business Review* or when his information was allegedly disclosed. (*Id.* at ¶¶ 1, 12, PageID.569-570, 575-576.) Nor does McVay allege when he purportedly began to "receive[] a barrage of unwanted junk mail." (*Id.* at ¶ 1, PageID.569-570.)

McVay alleges that his claim under the PPPA is timely because (i) there is a six-year limitation period for PPPA claims, and (ii) the Governor's Executive Order concerning the COVID-19 pandemic tolled the limitations period for 101 days. (*Id.* at ¶ 1, n.1, PageID.570.) With respect to monetary relief, McVay seeks only statutory damages, along with attorneys' fees and costs. (*Id.* at ¶ 76, PageID.593.)

## **HISTORY OF THE PPPA**

The Michigan state legislature passed the PPPA in 1988 to address concerns related to what it described as an "unwarranted invasion of privacy." *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (ECF 21-3); *see also* 1988 Mich. Pub. Act No. 378 (PPPA is "[a]n act to *preserve personal privacy* with respect to the purchase, rental, or borrowing of certain materials; and to provide penalties and remedies for violation of this act") (emphasis added).

In or around 2015, class action litigation arising out of the PPPA began to ensue. *See e.g. Boelter v. Hearst Communications, Inc. et al.*, No. 1:15-cv-03934-AT-JLC (S.D.N.Y.), ECF 1 (complaint filed May 21, 2015); *Boelter v. Advance Magazine Publishers dba Conde Nast*, No.

3

1:15-cv-05671-NRB (S.D.N.Y.), ECF 1 (complaint filed July 20, 2015); *Edwards v. Hearst Communications, Inc.*, No. 1:15-cv-09279-AT-JLC (S.D.N.Y.), ECF 1 (complaint filed Nov. 24, 2015).  The appeal of class actions under the PPPA was driven by the statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater. M.C.L. § 445.1715 (1989).

The Michigan Legislature then amended the PPPA in 2016 (the "2016 Amendment").[3] Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory damages, and in its place, provided only for actual damages. *See* MCL § 445.1715(2). The 2016 Amendment took effect July 31, 2016. Thus, July 30, 2016, was the last day the $5,000 statutory damages provision was available.

## ARGUMENT

To survive a motion to dismiss, McVay must allege facially plausible facts supporting his claims that HBP is liable under the PPPA. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Crucially, "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs.*, Inc., 520 F.3d 516, 520 (6th Cir. 2008) (emphasis in original).

The FAC fails to meet this standard and therefore should be dismissed.

---

[3]     S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at M.C.L. § 445.1711, *et seq.* (2016)).

4

I. **McVay's Claims Under the Pre-July 31, 2016 Version of the PPPA Are Time-Barred**

The PPPA was amended effective July 31, 2016 to eliminate any available recovery for statutory damages in the amount of $5,000. *See* MCL § 445.1715(2). The instant action was filed was filed on August 31, 2022 and McVay purports to have amended the initial complaint on October 12, 2022 (which attempt was ineffective, as discussed below). Both iterations of the complaint included a request for relief, on behalf of the named plaintiff and a putative class, that sought $5,000 in statutory damages for each purported violation. (FAC, ¶ 76, PageID.593; Prayer for Relief, D, PageID.594).

To be entitled to a statutory damages award, the cause of action must have arisen on or before the 2016 Amendment became effective on July 31, 2016 and filed (at the latest) within 6 years of the date of that the purported disclosure occurred.[4]  *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp.3d 666, 675 (E.D. Mich. 2022). Irrespective of whether the Court concludes that this action was instituted on August 31, 2022 or, as appropriate, October 12, 2022, the PPPA claim was filed more than 6 years after the 2016 Amendment. Accordingly, McVay has no claim for statutory damages.

McVay suggests in his pleading that his request for statutory damages under the PPPA remains available because the Governor of Michigan's executive order on March 23, 2020 ("Executive Order") concerning the COVID-19 pandemic tolled the statute of limitations for 101 days. ECF 21 at ¶ 1 n.1. PageID.570. (citing Mich. Supreme Court Administrative Order 2020-

---

[4] There is a dispute as to whether a 3-year or a 6-year statute of limitations applies with respect to PPPA claims. *Compare* MCL § 600.5813 (6-year catch-all limitations period for personal actions) *with* MCL § 600.5805 (3-year limitations period for injuries to persons or property). HBP acknowledges that this Court applied the 6-year limitations period *in Krassick v. Archaeological Institute of America*, 2022 WL 2071730 (W.D. Mich. June 9, 2022). While HBP maintains a 3-year statute of limitations should apply to PPPA claims and reserves the right to argue that a 3-year limitations period applies, the Court need not resolve this question to conclude that McVay's claim for damages under the pre-July 31, 2016 version of the PPPA is untimely.

3, Mich. Executive Order No. 2020-58). As recognized in the FAC, this Executive Order applies to "all deadlines applicable to the *commencement* of all civil and probate actions and proceedings" and "the *commencement* of all civil and probate case types." *Id.* (citing Mich. Supreme Court Administrative Order 2020-3, Mich. Executive Order No. 2020-58) (emphasis added). The Executive Order extended by 101 days the time for filing a claim; it certainly did not (and did not purport to) extend the cause of action for statutory damages. Indeed, an executive order could not override or extend the legislature's termination of causes of action for statutory damages. Thus, on its face, the Executive Order applies only to *claims* rather than specific remedies. *Id.* Accordingly, even if McVay is correct that his deadline to file a claim under the PPPA was tolled for 101 days, the remedy of statutory damages was not preserved as part of that tolling.

This conclusion is also consistent with the legislative history of the 2016 Amendment, which provides, in pertinent part: "The amendatory act is curative and intended to clarify that the prohibitions on disclosing information . . . and that a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation." S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016).

McVay's PPPA claim can only reach disclosures of information that took place, at the earliest, after September 1, 2016 because the FAC makes no claim for actual damages. But given the 2016 Amendment, which, as of July 31, 2016, eliminated the availability of statutory damages, no cause of action allowing such damages existed on that date. Therefore, no such relief is authorized under the PPPA during this period and any claim for statutory damages is barred.

## II.     McVay Fails to State a Claim Under the PPPA

To plead a claim under the PPPA, a plaintiff must allege facts that, if proven, would show both that the (i) defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) information specifically identified the plaintiff to the party receiving that information. M.C.L. § 445.1712 (1989) (prohibiting disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer").  Under McVay's own formulation of these statutory requisites, he must plead plausible facts demonstrating that, *during the relevant time period*, HBP unlawfully disclosed his private reading information ("PRI"), which includes his full name, title of publication subscribed to, and home address—to third parties. *See* ECF 21 at ¶ 7, PageID.573-574.  The FAC is wholly deficient in this regard.

### A.     McVay Fails To Allege Any Disclosures In The Relevant Period

McVay is clear that he is only seeking to enforce the PPPA as it existed prior to the 2016 Amendment.  FAC at ¶ 1, PageID.569-570.  As set forth above, any claim for statutory damages under the PPPA is time-barred because there can be no dispute that the instant action was filed more than even the 6-year limitations period that Plaintiff claims applied.[5]  Even if the Court concludes otherwise, however, McVay must allege a disclosure between, at the earliest, May 22, 2016 and July 30, 2016.[6]  *See* S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016), Mich. Executive Order No. 2020-58.  There is not a single allegation in the FAC that supports such a disclosure and in fact, McVay's allegations suggest the opposite.

---

[5]     As set forth in Section I, HBP disputes that any tolling even applies here.

[6]     This time period is even narrower if, as appropriate, the Court considers the filing date of McVay's FAC, which occurred on October 12, 2022.  Under those circumstances relevant time period is less than a month, between July 3, 2016 and July 30, 2016.

### 1. McVay's Allegations Concerning Data Cards Do Not Support That His PPPA Claim Is Timely

First, McVay alleges that *in 2007*, third parties (not HBP) published "data cards" relating to HBP on their own third-party websites. FAC at ¶¶ 2-3, PageID.571-572 (emphasis added). According to McVay, these data cards claim to offer a mailing list of HBP's subscribers for rental. *Id.* at ¶¶ 2-5, PageID.571-573. These allegations, which relate to purported conduct that occurred roughly fifteen years ago, fail to create a plausible inference that HBP disclosed protected PRI to third parties during the (at the most) 9-week period that is at issue here. Indeed, the alleged disclosures upon which McVay relies are 9 years too early to support his claim that he is entitled to seek relief for disclosures that must have occurred during the May 22, 2016 and July 30, 2016 period to be even potentially actionable.

Other courts have recognized that similar allegations are insufficient to survive a motion to dismiss. *See e.g. Nashel v. New York Times Co.*, No. 2:22-CV-10633, 2022 WL 6775657, at *1 (E.D. Mich. Oct. 11, 2022). In *Nashel*, the court addressed a nearly identical action alleging claims under the PPPA brought by the same lawyers representing Plaintiff here. Judge Murphy dismissed the claim where, as here, the plaintiffs attempted to rely on similar screenshots of third-party data cards appearing on third-party data broker websites. *Nashel*, 2022 WL 6775657, at *1. *Compare Nashel v. New York Times Co*, No. 2:22-CV-10633 (E.D. Mich.), ECF 16 (attached hereto as Exhibit A) at ¶¶ 1, 11, 17 *with* FAC at ¶¶ 1, 7, 12, PageID.569-570, 573-576. The *Nashel* court dismissed the plaintiffs' PPPA claim because it found that the data cards relied on by the plaintiffs "create[] only suspicion" as to whether the New York Times Company violated the PPPA prior to July 31, 2016, as the data cards at issue were posted in 2007 and 2008, which was "years before the relevant period." *Nashel*, 2022 WL 6775657, at *4. The same is true here with respect to McVay's allegations concerning data cards from 2007.

The *Nashel* court also rejected any effort to rely upon allegations that the defendant "systematically violated the PPPA from 2007 onward" as a legal conclusion "[b]ecause Plaintiffs cannot otherwise account for the near-decade time gap, the data cards make the complaint's allegations merely possible rather than plausible." *Id.* at *4-5. Here, in addition to relying upon allegations concerning disclosures that are more than 9 years prior to the relevant period, McVay also alleges that HBP "systematically" violated the PPPA. FAC at ¶¶ 3, 24, PageID.572, 579. This is the same "legal-conclusion inference" that the *Nashel* court rejected and this Court should reach the same conclusion.

Finally, the only data card included in the FAC references subscriber information *from 2021*. FAC at ¶ 2, Ex. A, PageID.571-572, 598-599. McVay's bald assertion that there are "similar 'data cards'… throughout the entire pre-July 31, 2016 time period," *id.* at ¶ 3, PageID.572, is not enough to avoid dismissal here. The *Nashel* court found that similar allegations alluding to alleged disclosures in 2020 were far too temporally removed from the relevant period to support allegations of disclosures in 2016. *Nashel*, 2022 WL 6775657, at *5 (finding that a 2020 study concerning alleged disclosures "misses the mark on timing" as pertains to the pre-July 31, 2016 period). Here, there is an even greater gap between the timing of alleged disclosures in 2021 and the relevant nine-week time period between May 22, 2016 and July 30, 2016 at issue here.

> **2. McVay Cannot Rely Upon HBP's Privacy Policy To Demonstrate His Claims Are Timely**

Similarly, the online privacy policy referenced in the FAC is not sufficiently connected to the relevant pre-July 31, 2016 time period to render McVay's allegations plausible. The policy cited is allegedly pulled from an archived version of the *Harvard Business Review* website from June 6, 2014. FAC at ¶ 8, PageID.574. McVay cannot avoid dismissal of his FAC by pointing

9

to a privacy policy allegedly in effect two years prior to the relevant period. Even when construing the statute of limitations as generously as possible in favor of McVay, his claim falls inside a nine-week period during 2016. A June 6, 2014 privacy policy cannot make plausible McVay's allegations of alleged disclosures two years later. Indeed, McVay does not even explicitly allege that the policy was in effect at the relevant time, asserting only that "both before and throughout the entire relevant pre-July 31, 2016 time period, HBP admitted" that it made disclosures through its online privacy policy. FAC at ¶ 8, PageID.574. Any alleged admission, however, cannot be automatically extended to 2016 – such a leap is not plausible and is insufficient to state a claim. *See Nashel*, 2022 WL 6775657, at *5.

### 3. McVay Fails To Allege Any Facts Regarding His Own Alleged Subscribership

Finally, McVay fails to support his assertion that his PRI was disclosed within the relevant nine-week period with any allegations of specific dates on which he subscribed to *Harvard Business Review*. Instead, McVay alleges, in conclusory terms, that he subscribed to *Harvard Business Review* "prior to July 31, 2016." FAC at ¶ 12, PageID.575-576. And, although McVay alleges that he began to receive additional unwanted mailing as a result of HBP's purported disclosures, he is silent as to when he began to receive such unwanted materials. FAC at ¶ 1, PageID.569-570. This is all information that should be entirely within McVay's possession and control and his failure to allege such facts only highlights the vague nature of his claims.

### B. McVay Fails To Allege Facts To Support His Claim That HBP Disclosed His PRI

In order to state a claim under the PPPA, a plaintiff must plead facts to support a plausible inference that the "*[d]efendant* 'engaged in the business of selling written material to disclose information personally identifying the customer.'" *Nashel v. The New York Times*, 2022

10

WL 6775657, at *5 (E.D. Mich. Oct. 12, 2022) (emphasis in original) (quoting *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (E.D. Mich. 2018)).  McVay fails to allege sufficient facts concerning disclosures by HBP to sustain his PPPA claim.

Specifically, McVay alleges, in support of his PPPA claim, that in 2007, third parties (not HBP) published data cards relating to HBP on their own third-party websites.  FAC at ¶¶ 2-3, PageID.571-572.  According to McVay, these data cards apparently claim to offer a mailing list of HBP's subscribers for rental.  *Id.* at ¶¶ 2-5, PageID.571-573.  Allegations concerning information provided by third-party data brokers, even if taken as true, do not support McVay's conclusion that HBP itself was the one "renting, exchanging, or otherwise disclosing" PRI.

In *Nashel*, Judge Murphy held that precisely the same type of allegations were insufficient to maintain a PPPA claim.  Indeed, the court found that nothing on the data card screenshots relied on by the plaintiffs explained how the list brokers received the New York Times Company's subscription list and "thus fail to support a crucial element of Plaintiffs' alleged action" by failing to allege that the defendant made the alleged unlawful disclosures. *Nashel*, 2022 WL 6775657, at *5.  Because the plaintiffs in *Nashel* "only indirectly aimed blame at [the New York Times], but the indirect evidence failed to create a reasonable inference of [the New York Times'] culpability," the plaintiffs were left with nothing more than "their bare conclusion that [the New York Times] systematically violated the PPPA." *Nashel*, 2022 WL 6775657, at *5.  Similarly, here McVay fails to allege that HBP explicitly disclosed any subscribers' PRI, much less the named-plaintiff McVay's PRI, to anyone, at any point in time.

In addition, and consistent with Judge Murphy's conclusion in *Nashel*, the Northern District of California dismissed a similar PPPA claim against Apple where the plaintiffs also attempted to rely on similar screenshots of third-party data cards that appeared on third-party

11

data broker websites. *Wheaton v. Apple Inc.*, No. 3:19-CV-02883, 2019 WL 5536214, at *1 (N.D. Cal. Oct. 25, 2019). The court in *Wheaton* found that the data cards relied on by the plaintiffs did not actually show that Apple "explicitly disclose[d] any names, addresses, or personally identifying information of customers" to third parties." *Id.* at *4. The allegations advanced here against HBP are similar and should fail for the same reasons.

Finally, dismissal is also consistent with other decisions rendered in the context of privacy claims, where federal courts routinely dismiss claims similar to the one asserted by McVay here. For example, in *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022), the Sixth Circuit affirmed dismissal of a claim for public disclosure of private facts where the plaintiff made only conclusory allegations with respect to the disclosure at issue. The Sixth Circuit held that those bare allegations did "not allege when these disclosures occurred, who the [information was disclosed to], or whether [the disclosure] contained private information." *Id.* at 297. The instant case suffers from this same defect—the specifics of the "when," and the "to whom" are not pled whatsoever as to any subscribers, much less about McVay himself. Simply, McVay has not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (quoting *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). His claim should be dismissed with prejudice.

### III.     McVay Cannot Amend Johnson's Complaint

Separate from his failure to state a claim, McVay's FAC should be dismissed because he is not permitted to piggyback on Carlos Johnson's pleading. It is black-letter law that a plaintiff who has no ability to maintain his own action cannot file an amended complaint: "Sixth Circuit law expressly holds that substitution is improper when the original named plaintiff lacks standing to assert claims." *Barnes v. First American Title Ins. Co.*, 473 F. Supp. 2d 798, 800 (N.D. Ohio 2007). Johnson had no ability to maintain a cause of action against HBP. Indeed, there are no

12

claims or allegations asserted on behalf of Johnson in the complaint filed by McVay, which purports to amend Johnson's original complaint. There was, simply, no proper party available to amend the complaint when McVay purported to do so. *See Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) (finding that a party that has not suffered injury in fact by the defendants has no standing to substitute the real party in interest); *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (finding that a plaintiff with no standing to proceed cannot substitute a party).

McVay's bid to substitute himself for Johnson in the same action through an amended complaint (rather than by filing his own complaint) is a transparent attempt to improperly preserve a larger putative class period. McVay has no basis to maintain his purported FAC, as "amending to add new parties who assert claims that [an original plaintiff] never had, and still do[es] not have, must fail." *In re Packaged Ice Antitrust Litig.*, No. 2:08-MD-01952, 2011 WL 6178891, at *6 (E.D. Mich. Dec. 12, 2011); *see also Stapp v. Broadwing, Inc.*, No. 1:07-CV-00970, 2009 WL 530100, at *3 (S.D. Ohio Feb. 27, 2009) ("Because the Court finds that Plaintiffs lack standing under the Amended Complaint, the Court cannot allow Plaintiffs to amend the Complaint to create jurisdiction retroactively."). Accordingly, McVay's FAC should be dismissed on this ground as well.

### IV. Dismissal with Prejudice is Warranted

This is the second attempt (with a second Plaintiff) to articulate cognizable PPPA claims against HBP. Having presumably put forth his best allegations in support of PPPA violations here, it is clear that McVay cannot cure his pleading deficiencies or the fundamental defects with his claim. *See Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014) (finding dismissal with prejudice proper where plaintiff "could prove no set of facts in support of its allegations that would entitle it to relief" rendering amendment futile).

Accordingly, any attempt by McVay to amend would be futile, and the FAC should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated:  November 2, 2022    Respectfully submitted,

        By: */s/ Whitney M. Smith*
           KELLEY DRYE & WARREN LLP
           Whitney M. Smith
           New Jersey Bar No. 035552006
           One Jefferson Road, 2nd Floor
           Parsippany, New Jersey 07054
           Telephone: (973) 503-5900
           wsmith@kelleydrye.com

           *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

This memorandum complies with the word limit of Local Civil Rule 7.2(b)(i) because, excluding the parts exempted by the Rule, it contains 4,287 words. The word count was generated using Microsoft Word 2016.

*/s/ Whitney M. Smith*
Whitney M. Smith
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5923

## CERTIFICATE OF SERVICE

I, Whitney M. Smith, an attorney, hereby certify that on November 2, 2022, I served the above and foregoing on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

*/s/ Whitney M. Smith*
Whitney M. Smith (N.J. Bar No. 035552006)
**KELLEY DRYE & WARREN LLP**
One Jefferson Road
Parsippany, NJ 07054
Tel: 973-503-5923